THE BARNETT & RECORD COMPANY

*v.*

CASPER SCHLAPKA.

*Opinion filed February 17, 1904—Rehearing denied April 12, 1904.*

1. MASTER AND SERVANT—*when case should go to the jury.* An action by a servant for injuries should go to the jury where the evidence tends to prove that the master did not exercise ordinary care to provide the servant a reasonably safe place to work, and that the master had knowledge of the danger but that the servant did not know of the danger and had not equal means of knowledge with the master.

2. SAME—*effect where servant has some knowledge of danger.* That a servant had some knowledge of the danger of obedience to the

command of the foreman, who knew of the danger fully, does not defeat a recovery for injury received in carrying out the order, if he acted with the degree of care which an ordinarily prudent man would have exercised under the circumstances.

3. SAME—*what equivalent to re-affirmance of order.*  Where a servant is ordered by the foreman to work in a tunnel and is assured by the foreman there is no danger of a cave-in, the fact that the foreman, after ordering other men to leave the work on account of the danger, which order was not understood by the plaintiff, knowingly permitted the plaintiff to again enter at the request of another servant, amounts to an affirmance of his earlier order to work in the tunnel.

4. SAME—*servant not required to make inspection for latent dangers.* While a servant ordered to work in a tunnel cannot close his eyes to obvious dangers, yet he is not required to make an investigation as to the character of the soil and the latent danger therefrom, but may rely upon the master's performance of his duty to exercise ordinary care to see that the place is reasonably safe.

5. DAMAGES—*when instruction as to measure of damages is not improper.*  An instruction as to the measure of damages for personal injury is not improper which authorizes the jury to take into consideration the effect, if any, of the injury in the future upon plaintiff's ability "to work in his ordinary and former line of labor."

6. INSTRUCTIONS—*when instruction is properly modified.*  An instruction in a personal injury case advising the jury that defendant was not liable for an injury arising from such conduct and commands on its part as might be expected of a reasonably prudent person, is properly modified by inserting the words "having due regard to the safety of plaintiff."

*Barnett & Record Co.* v. *Schlapka,* 110 Ill. App. 672, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. N. E. WORTHINGTON, Judge, presiding.

This suit was an action on the case brought by appellee, against appellant, in the circuit court of Peoria county, where, at the September term, 1902, a trial was had before a jury and a verdict rendered in favor of appellee for $3760.   Motions for a new trial and in arrest of judgment having been made and overruled, judgment was entered on the verdict, and appellant appealed to

the Appellate Court for the Second District. That court affirmed the judgment of the circuit court, and the case is now brought to this court by appeal.

The declaration consisted of two counts, the first charging that the appellant carelessly and negligently shored, propped and braced the sides, walls and banks of a certain ditch or tunnel which it was constructing, in a manner which was insecure, unsafe and dangerous, and that plaintiff, not having knowledge of these defects, and being assured by defendant that said ditch or tunnel was a safe place in which to work, by the order of defendant's foreman commenced work therein, and while so engaged in his work the side walls and banks of the ditch or tunnel broke, caved in and fell upon him, whereby he was injured. The second count differed from the first in that it charged that defendant carelessly and negligently partially excavated and constructed the ditch or tunnel before plaintiff was employed by defendant, and that plaintiff had no knowledge that the excavating had been carelessly and negligently done theretofore, etc. To the declaration defendant pleaded the general issue.

Appellant is a construction company, and during the summer of 1901 was engaged in erecting an annex to the Iowa elevator, near the city of Peoria, and in constructing a ditch (referred to as a tunnel) connecting these two buildings, through which grain could be taken from one building to the other. This tunnel was thirty-five feet long, an average of eight feet deep and twelve feet wide at the bottom. Along both sides of the bottom of the tunnel, trenches, about three feet wide and eighteen inches deep, were being dug, boards placed on each side of the trenches, and boxes constructed therein, into which concrete was placed to form the foundation or base for the walls of the tunnel. The sides of the tunnel did not rise perpendicularly, but sloped, so that the tunnel was about three feet wider at the top than at the bottom.

The tunnel was not covered.   It was nothing more than a wide, open ditch.   There was nothing whatever over it except two railroad tracks which crossed it, and a shed, which the company's carpenter, on behalf of appellant, testified covered part of it, but at what part of the tunnel this shed was located the evidence does not disclose.   No other witness in the case testified in regard to the shed.   The rails for the railroad tracks were fastened to ties which rested on I-beams, and these beams were temporarily supported by upright timbers resting in mud-sills at the bottom of the tunnel.

On August 6, 1901, appellee was employed by appellant to work for it.   He commenced work in the afternoon of that day, helping dig a small outside ditch.   The remainder of the afternoon he was engaged in removing stone from a box-car.   On the following morning he was ordered by appellant's foreman to work in one of the trenches in the bottom of the tunnel.   He looked at the wall of the tunnel and inquired of the foreman if it was solid, in response to which the foreman said that it was, and ordered plaintiff to proceed with work in the trench. Plaintiff worked at digging a short time, when, as he says, his services were no longer required there and he went outside and was at work on the surface of the ground. About five minutes after leaving this trench, and while he was standing at the mouth of the tunnel, a man carrying a board came up and asked appellee to take one end of it and help carry it into the ditch.   Appellee testified that this man was a stranger to him.   Brown, a carpenter in the employ of appellant, testified that he was the man referred to by appellee.   They carried the board in, appellee walking in the trench at the side of the tunnel on which the board was to be placed.   Brown testified that the board was being taken in to shore the side of the tunnel, which he had observed a few minutes before was cracked and appeared unsafe, while appellee testified that the board was to be used in the trench in

making the box for concrete. When appellee reached the place in this trench where he had been at work digging, the side of the tunnel caved in from the top and a large amount of earth and bricks fell upon him, causing the injuries complained of in this suit.

About three days previous to the injury the side of another tunnel or ditch which appellant was constructing about twenty-five feet away from this one had caved in. The ground in both of these tunnels was of the same character. At the surface was filled or made ground, which was cohesive. Proceeding downward the soil became looser, and seven or eight feet below the surface there was a sandy soil. For a distance of about sixteen feet on the side of the tunnel where appellee was injured, appellant had placed boards or timber against the side of the tunnel, but this support stopped about twelve feet from the place where appellee was injured, and at that place there was nothing whatever to keep the side from caving in. At or very near the place where the injury occurred one of the railroad tracks crossed the tunnel, and for two or three nights previous thereto engines and cars had crossed on this track,—a fact known to the master but not to the servant. The passage of these engines and cars was apt to loosen the soil. A few minutes before the injury, machinery in the Iowa elevator was started, and appellant's foreman noticed that it caused the earth on one side of the tunnel to vibrate, and noticed a crack in that side extending from the top to the bottom, and ordered the workmen out of the trench on that side of the tunnel.

Appellee swears he received no warning from any one until, carrying the end of the board, he reached the place in the ditch where he was injured, when the foreman, who was standing near by in the tunnel, called to him to go away or get out, but the side immediately caved in, and he had no time to get out of the trench before the earth fell on him. He testified that he had had

no previous experience in making such excavations or working about them.

At the close of plaintiff's evidence, and again at the close of all the evidence in the case, appellant submitted and requested the court to give to the jury an instruction in writing telling them to find the defendant not guilty, which the court refused to do.

The alleged errors relied upon by appellant for a reversal of the cause by this court are the action of the court in refusing the peremptory instruction, the giving of appellee's first and fourth instructions, and modifying the fourth, eighth, ninth and eleventh instructions offered by appellant.

STEVENS, HORTON & ABBOTT, for appellant.

HARRY S. MILLER, (ELMER J. SLOUGH, of counsel,) for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The evidence in this case, the substance of which is recited in the foregoing statement of facts, tends to prove that the master did not exercise ordinary care to provide a reasonably safe place for the servant to work in; that the master had knowledge of the danger; that the servant did not know of the danger and had not equal means of knowing with the master. The peremptory instruction was therefore properly refused. *Lake Erie and Western Railroad Co.* v. *Wilson,* 189 Ill. 89; *Momence Stone Co.* v. *Turrell,* 205 id. 515; *Western Stone Co.* v. *Muscial,* 196 id. 382.

The danger was latent in its character, and arose, in great measure, from the formation of the soil through which the tunnel was excavated. Appellant had notice of this danger from the fact that, a few days before, a similar accident had occurred in another tunnel, through the same sort of soil, a short distance from this one. Appellee inquired, before going into the excavation, whether there was danger of the character which actually ex-

isted, and the reply of appellant's superintendent was, substantially, an assurance that there was none. He then went into the ditch and worked in one of the trenches along the side a short time, when, as he says, there were more men there than were needed, and he went outside to shovel away the earth that was thrown out on the side of the tunnel.   Shortly after this it was discovered by the superintendent that the bank on one side was breaking away and apt to fall in immediately. The men then remaining in the trench on that side were ordered out of the trench, but not out of the tunnel, on this account.   Appellee swears that he heard no such order, and it is earnestly insisted that when he went back after this, helping a carpenter to carry a board in, he assumed the risk of injury from the accident which thereafter occurred.   The answer to this is, that the evidence on his part tends to show that he had not been advised of the impending danger.   It does not appear that he had, or ought to have had, knowledge of any change in conditions which existed at the time he had been assured by the master's representative that there was no danger of the kind which in fact actually existed.   He went into the tunnel carrying one end of the board in consequence of a request made by Brown, the carpenter.   The evidence justifies the conclusion that the superintendent was present, heard this request and saw appellee complying therewith.   When they got into the tunnel with the board, plaintiff walked in the trench on the side where the bank caved in.   As he and the carpenter carried the board along the tunnel, appellant's foreman crawled under it to get out of their way.   Neither the superintendent nor the foreman said anything to him at that time in regard to the existence of the danger, and he swears that the board was to be used in making the box in the trench, while those who testify for appellant swear that it was to be used in shoring the bank where the break was anticipated.

Appellant cites *Simmons* v. *Chicago and Tomah Railroad Co.* 110 Ill. 340, and other similar cases, in support of the doctrine that the general rule that it is the duty of the master to use ordinary care to provide a reasonably safe place in which the servant may do his work is not applicable where the character of the work is such that the relative safety of persons there employed necessarily varies from time to time as the work progresses and the work being done at times renders the place dangerous. It will be found, on examination, that these cases apply only where the work being done necessarily renders the place dangerous, as in mining coal, blasting stone, wrecking buildings, and other matters of a like nature. In this case the banks of the tunnel could have been given greater slope at a slight increase of the expense, and this would have entirely obviated the danger, or the sides could have been shored throughout the entire length as they were throughout a portion of their length. This last expedient was said by witnesses for defendant below to be impracticable,—a statement which the jury may possibly have discredited, as defendant also sought to show that it attempted to shore the side of the tunnel where this break occurred as soon as it was discovered that the earth had begun to give way.

Objection is made because the first instruction given on the part of appellee advised the jury that if plaintiff had some knowledge of the attendant danger, still that if, in obedience to the command of the foreman, who had knowledge of the danger of obeying the command, the plaintiff placed himself in a position of danger, such knowledge as the plaintiff had would not defeat his right of recovery, if, in obeying the command, he acted with a degree of care and prudence and diligence that an ordinarily prudent man would have used under the circumstances. We think this instruction in accordance with the view expressed in *Western Stone Co.* v. *Muscial, supra,* where it is said (p. 386): "Even had appellee had some

knowledge of the defect in the bank, yet the order of the master to proceed with the dangerous work would relieve him of the assumption of the risk, unless the danger was so manifest that a person of ordinary prudence would not have incurred it." It is said, however, that if the instruction states a correct proposition of law, it was improperly given in this case, because it would lead the jury to conclude that they might find that appellee was in the tunnel at the time of the accident in consequence of the order given him by the foreman to go there in the morning, while appellant's position is that he was there, when he received the injury, as a mere volunteer or at the request of the carpenter, who seems to have been a fellow-servant. In view of the fact that the evidence tends to show that the superintendent was present and heard the carpenter request appellee to return to the ditch and saw appellee complying with the request, and that the foreman crawled under the board as it was being carried into the trench to get out of the way, and neither said anything to advise appellee of the changed conditions or of the order that had been given to keep out of the trench in which plaintiff walked with the board, we think the conclusion not unwarranted that the conduct of the superintendent and the foreman at that time amounted to an affirmance or repetition of the order given by the foreman earlier in the day. The objection to the instruction is not well taken.

The fourth instruction given on behalf of the plaintiff was in reference to the measure of damages, and authorized the jury to take into consideration the effect, if any, of the injury in the future upon the plaintiff's ability "to work in his ordinary and former line of labor." This is said to exclude from the jury the consideration of what plaintiff might be able to earn in other lines of employment. The instruction had no such effect. It merely authorized the jury to consider the plaintiff's decreased ability, if any, to engage in his former occupa-

tion.   It left them free to consider his earning capacity
in other lines of employment.   An instruction identical
with this one in this respect was approved in *Illinois Cen-
tral Railroad Co.* v. *Read*, 37 Ill. 484, and has been ever since
treated by this court as a correct statement of the law.

The court modified the defendant's fourth and eighth
instructions, so that, as given, they advised the jury
that if the defendant's "conduct and orders (having due
regard to the safety of plaintiff) were such as a reason-
ably prudent person having a like duty to perform as
the defendant would have done or given under similar
circumstances, then the defendant was not negligent."
The modification consisted in the insertion by the court
of the words in parentheses, and the argument is, that
the instructions, as given, called special attention to the
duty which the defendant owed to the plaintiff, which is
said to have been no greater than its duty to its other
servants, and the trend of the argument seems to be that
if the instruction had advised the jury that the defendant
must have due regard to the safety of its servants it
would have been unobjectionable.   We think in that form
it would have been the subject of much more serious ob-
jection.   The only duty in that respect for the consider-
ation of the jury in this case was the duty owing to the
plaintiff.   The jury were being advised that the defend-
ant was free from liability for an injury resulting from
such conduct and orders as might be expected of a rea-
sonably prudent person, and in that connection it was
not improper to call their attention to the obligation
resting upon the defendant in regard to considering the
safety of the plaintiff.   That is one of the things which
a reasonably prudent person would consider under simi-
lar circumstances.

By the ninth instruction defendant asked to have the
jury instructed that if plaintiff "had equal means and
capacity" with the foreman of knowing the condition of
the side of the tunnel and the danger therefrom, and that

the foreman, before the plaintiff commenced work, expressed an opinion that the side of the tunnel was safe, the plaintiff would have no right to rely upon such opinion. The court's modification consisted in the insertion of the words "and capacity." The instruction, both as requested and as modified, is misleading. It should not have been given in either form, because the jury were apt to conclude therefrom that the servant should have made an examination to determine whether the place was safe. He was not required by the law to make an investigation for the purpose of learning the nature of the soil, and the danger, if any, resulting therefrom. He could not close his eyes to open and obvious dangers, but he had a right to presume that the master had performed its duty by using ordinary care to provide him a place reasonably safe in which to work, and it was not his duty to make an examination for the purpose of discovering whether there were latent or hidden dangers. (*Ross .v. Shanley,* 185 Ill. 390; *Western Stone Co.* v. *Muscial, supra.*) What the rights of the respective parties would be if the danger was one that was apparent upon ordinary observation, or where the danger was actually discovered by the servant, this instruction does not attempt to advise the jury. The error in giving this instruction was one that favored appellant. It cannot complain.

By defendant's eleventh instruction it is sought to have the jury informed that the plaintiff could not recover if the injury was the result of an accident without the fault of either plaintiff or defendant. The court modified the instruction by inserting a definition of the word "accident," which was not improper.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*