## HEALY v. CENTRAL R. CO. OF NEW JERSEY.
### Civ. No. 728.

District Court, E. D. New York.
Nov. 7, 1940.

Stephen A. Machcinski, of New York City (William Paul Allen and Eugene P. Fitzpatrick, both of New York City, of counsel), for plaintiff.

John J. McElhinny, of New York City, for defendant.

BYERS, District Judge.

The plaintiff had a verdict of $4,500 for loss of three fingers of the left hand at the lower joint, and decision was reserved of a motion to set it aside and for a directed verdict for defendant.

The plaintiff had been a freight conductor in defendant's employ for nineteen years, during which he had worked all over the Communipaw yard where this accident happened at about 11 p. m. on June 18, 1939. The float yard is that portion at which car floats are landed, and freight cars are moved on and off, as required, across float bridges; i. e., structures attached to the shore, which rise and fall with the tide, to provide mooring stages for the car floats.

The plaintiff was moving from the northerly of two tracks carried on float bridge No. 4, about 10 feet inshore therefrom, intending to ride the stirrup on the east end of the last car in a 5-car draft which was moving westerly at about 4½ miles an hour, on the southerly track from that float bridge, toward a switch 250 feet westerly; there the draft would be switched to the northerly track leading back to the latter side of the float bridge.

He had to cross the space between the northerly and southerly tracks, and was moving fast, facing toward the stirrup which was his objective and the grab irons above it, when he fell, causing his left hand to drop upon the rail nearest him, and to be run over by the car wheel.

This happened at about 10 feet west of the inshore end of the float bridge.

He had not worked in the float yard during the daytime at all, but knew that in the space between the tracks there was a 2-inch steam pipe running from a point some 25 feet inshore from the float bridge, parallel with the southerly tracks and carried in that position by the bridge, to its outboard end where it was connected with a pump which cleared the outboard caisson supporting the float bridge, of water which seeped into it. That was necessary to the functioning of the float bridge.

The plaintiff testified that when he picked himself up he looked around to see what had caused him to trip, and he observed this pipe lying clear of the ground, by perhaps a half inch, which was higher than he had observed it on prior occasions. He was honest enough not to say that he felt his foot strike that pipe as he endeavored to step on the stirrup, and so his version of the happening must be taken to be that he concluded that he must have tripped over the pipe.

The verdict is construed to accord with that surmise.

The negligence imputed to the defendant is that it failed to maintain the fill of ashes and cinders, which supported the pipe, at a uniform level, because the plaintiff says that he had never before seen more than a half inch of the pipe projecting above the fill, except when the ties supporting the adjacent rails, as well as this pipe, were exposed on their undersides as the result of a washout caused by a heavy storm.

Quirk, a brakeman on this draft of cars, heard the plaintiff's cry of pain, and went to his assistance, but did not witness the accident. He said, on direct, that he had seen the pipe above ground prior to the accident, as shown in the photograph, Exhibit B, and that high tide raises the pipe according to his observation. On cross, and in answer to a leading question, he was somewhat wheedled into agreeing that he had seen the pipe covered with ashes and soot, which is more than the plaintiff asserted.

Lesisco, the forward brakeman, did not see the accident, but also went to plaintiff's assistance when he learned of it. He also knew of the pipe as being on top of the ground, and he had never seen the pipe covered by ashes, nor had Olivier, the float bridgeman.

For the plaintiff, it is urged that the Court must deny this motion because of this conflict in testimony, on the theory that it presented purely a question of fact for the jury.

Having heard the testimony and observed the demeanor of the witnesses, and made notes of their testimony, I am constrained to observe that no conflict worthy of that appellation was developed. Quirk did not say that, at any time within his observation, the pipe was hidden from view at the distance of about 10 feet from the inner end of the float bridge. His statement that a high tide raises the pipe would be inconsistent with any such construction

of what he was induced to say by the form of examination employed.

It is obvious that this pipe could not be rigidly held at such a distance from the float bridge, for of necessity it had to yield to the changing plane of that structure in order to serve its only possible purpose.

Since the plaintiff may be taken to have reckoned upon the presence of the pipe, according to his testimony, with a half inch or 25% of its diameter projecting above the fill, the charge of negligence would come down to the assertion that permitting it to project 2 inches higher, without notice, amounted to providing the plaintiff with an unsafe place in which to work.

In examining this contention, it is necessary to recall that the plaintiff not only knew of the presence of the pipe, but its office; that is, he knew it was required to move vertically, to some extent, near the inner end of the float bridge. In the absence of any testimony to the effect that approved construction and maintenance of such a pipe as this, i. e., customary and sanctioned practice, required something of the defendant which the evidence shows to have been omitted, it is not seen how the verdict can stand. It is thought that such a requirement is comparable to that discussed in Williams v. New Jersey-New York Transit Co., 2 Cir., 113 F.2d 649, where the law of New Jersey was under consideration in a passenger case. It is not seen why, in a case under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., there should not be a comparable requirement of proof, where the employee is complaining of a known condition. This case differs from Northern Pacific Ry. Co. v. Berven, 9 Cir., 73 F.2d 687, and Pitcairn v. Hunault, 7 Cir., 86 F.2d 664, in both of which it appeared that the employee tripped over a temporary and unusual obstacle whose presence was unknown to him.

In the belief that, if the plaintiff can procure such evidence as is here suggested, he should be accorded the chance to do so, the defendant's motion for a directed verdict will be denied; but the present verdict will be set aside as contrary to the evidence, and a new trial ordered.

Settle order.